# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JACK JORDAN, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 16-1868 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 10, 16, 20, 24, 25, |
| | : | | 29, 31, 33, 36 |
| | : | | |
| U.S. DEPARTMENT OF LABOR, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**GRANTING PLAINTIFF'S UNOPPOSED MOTION TO AMEND COMPLAINT; DENYING PLAINTIFF'S CORRECTED MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S FIRST MOTION FOR SANCTIONS UNDER RULE 11; DENYING PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS OF TODD SMYTH AND DIANE JOHNSON; DENYING PLAINTIFF'S MOTION TO STRIKE THE SMYTH DECLARATION; DENYING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF EVIDENCE REGARDING SMYTH DECLARATION; DENYING PLAINTIFF'S MOTION TO STRIKE PROHIBITED EX PARTE COMMUNICATION AND VACATE OCTOBER 26 MINUTE ORDER; DENYING PLAINTIFF'S SECOND MOTION FOR SANCTIONS UNDER RULE 11; DENYING PLAINTIFF'S MOTION REGARDING THE APA AS BASIS FOR DECISIONS**

## I. INTRODUCTION

Plaintiff Jack Jordan, an attorney, sued under the Freedom of Information Act ("FOIA") seeking documents related to FOIA requests he previously submitted to the Office of Administrative Law Judges ("OALJ"), an agency within the United States Department of Labor ("DOL"). Mr. Jordan requested the first two emails in a continuous string of five emails ("DynCorp emails") related to Defense Base Act Case No. 2015-LDA-00030 ("DBA Proceedings"), a case in which Mr. Jordan is representing his wife, Maria Jordan, against DynCorp International, Inc. ("DynCorp").

Mr. Jordan sought the disclosure of any emails, dated July 30 or July 31, 2013, with the subject line "WPS – next steps & actions" that DynCorp's counsel had forwarded to Administrative Law Judge ("ALJ") Larry S. Merck. The DOL denied this request insofar as it related to unredacted copies of the first two emails, claiming that attorney–client privilege applied to portions of the DynCorp emails, and provided Mr. Jordan a redacted copy of the DynCorp emails in response to his initial FOIA request. Mr. Jordan sued to compel disclosure of all previously undisclosed versions of the DynCorp emails associated with his initial request on the grounds that the DOL had no legitimate basis for considering the DynCorp emails privileged and exempt from disclosure. Having reviewed the record and the DynCorp emails in camera, the Court agrees that one of the emails is privileged and thus exempt from disclosure, but orders the DOL to either disclose the other email or provide further justification for its continued withholding.

## II. FACTUAL BACKGROUND

Over a period of seven months, Mr. Jordan filed five FOIA requests relating to the DynCorp emails in an effort to obtain all previously undisclosed versions of the DynCorp emails. *See* Compl. at 5 , ¶¶ 10–19, ECF No. 1. Although the first request is most relevant here—and the final two requests have no relevance at all—the Court separately describes each of Mr. Jordan's five requests for the sake of completeness.

### A. FOIA Request No. F2016-806591

On June 9, 2016, Mr. Jordan submitted his first FOIA request, which was for several documents related to the DynCorp emails. *See* Answer, Ex. 4, 14–16, ECF No. 14-1.[1] Mr. Jordan

---

[1] The DOL's Answer is located at ECF No. 14. Exhibits attached to the DOL's answer can be located at ECF No. 14-1.

specifically requested (1) "a copy of any letter of transmittal, facsimile cover sheet or any other evidence . . . identifying the person or party who forwarded to Judge Merck's office (or to the OALJ) any documentation related to . . . the claim for disability compensation that was filed . . . by Maria Jordan," *see id.* ¶ 1; (2) "a copy of any version (regardless of whether or not any information was redacted) of certain emails that were forwarded to Judge Merck's office at any time in October through December 2015" dated "July 30 or 31, 2013[,] that had substantially the following text in the subject line: 'WPS – next steps & actions,'" *see id.* ¶ 2; and (3) "a copy of any letter of transmittal, facsimile cover sheet or any other evidence dated at any time in October through December 2015 identifying the person or party who forwarded to Judge Merck's office (or to the OALJ) any version of the [DynCorp] emails in #2, above," *see id.* ¶ 3. The first paragraph in Mr. Jordan's request included a footnote clarifying that the particular request did not "apply to the underlying documentation, *e.g.*, any motion or opposition thereto that was served by any party to the captioned case." *See id.* at 15, n.1.

On June 28, 2016, the DOL partially released and partially withheld documents responsive to Request No. 806591. Def.'s Cross-Mot. Summ. J. and Opp'n Pl.'s Corrected Mot. for Summ. J. ("Def.'s Cross-Mot."), Ex. 1, Attach. C, ECF No. 20-1.[2] In response to Mr. Jordan's first request, Acting FOIA Coordinator Diane Johnson communicated that a "search of the Administrative File in ALJ No. 2015-LDA-00030 was conducted" and revealed a "two page letter dated November 20, 2015 from the law firm of Brown Sims addressed to District Chief Judge Lee Romero in Covington, Louisiana" and forwarded to ALJ Merck. *Id.* at 21. Per footnote 1 of Mr. Jordan's request, the DOL enclosed the letter but did not include "the motion itself or the attachments to the motion." *Id.* at 21, n.2.

---

[2] All attachments to Def.'s Cross-Mot., Ex. 1 can be found at ECF No. 20-1.

In response to Mr. Jordan's second request, Ms. Johnson explained that ALJ Merck "reviewed [the DynCorp emails] in camera and determined that they contained privileged attorney–client communications." *Id.* at 22. Due to ALJ Merck's finding that "the unredacted versions of the requested documents [were] protected from discovery by attorney–client privilege," Ms. Johnson determined that FOIA Exemption 4, which protects "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential," 5 U.S.C. §552(b)(4), applied and the unredacted emails would not be disclosed. *See id.* However, Ms. Johnson enclosed a 2015 letter from the law firm of Littler Mendelson, P.C. pertaining to the filings, along with redacted versions of the DynCorp emails that had been filed with ALJ Merck. *See* Def.'s Cross-Mot., Ex. 1, Attachs. D–E. The DynCorp email chain—which contains a total of five separate emails—contains two partially redacted emails, which are also the first two emails of the chain. Of those two emails, only the sender, recipients, date, and subject line were released. Def.'s Cross-Mot., Ex. 1, Attach. E. The chronologically first email ("the Powers email") spans roughly three pages. Def.'s Cross-Mot., Ex. 1, Attach. E. The second email ("the Huber email") spans roughly half of a page. Def.'s Cross-Mot., Ex. 1, Attach. E.

Littler Mendelson's letter stated that, per an October 2015 Order from ALJ Merck, the firm submitted unredacted copies of the DynCorp emails to ALJ Merck for in camera review. *See* Def.'s Cross-Mot., Ex. 1, Attach. D at 25. Littler Mendelson maintained that "the redacted portions of the at-issue email thread are privileged" and explained "the basis for asserting attorney–client privilege." *Id.* The DynCorp emails "concerned the status of operations issues in connection with the Worldwide Protective Services ('WPS') Program contract" and were transmitted to Christopher Bellomy, an in-house lawyer for DynCorp. *Id.* Littler Mendelson asserted that the DynCorp emails were transmitted to Mr. Bellomy to apprise him and other

employees[3] "of developments potentially impacting the contract." *Id.* at 26. These emails, Littler

Mendelson contended, "were intended to be, and should remain, privileged among the select

group of employees who received the at-issue communication." *Id.* at 25. The letter stated that

the notation "Subject to Attorney Client Privilege" appeared within the DynCorp emails and that

the DynCorp emails requested legal advice related to the developments discussed therein. *See id.*

at 25–26. The DOL redacted "all text from the body of the initial two [e]mails," because,

according to Defendant, these two emails were privileged in their entirety. Compl. ¶¶ 2, 11.

Littler Mendelson's letter also satisfied Mr. Jordan's third request.[4] *See* Def.'s Cross-Mot., Ex. 1,

Attach. C at 22.

### B. FOIA Request No. F2016-819736

On July 5, 2016,[5] Mr. Jordan submitted "additional requests" related to the FOIA request

described above. Def.'s Cross-Mot., Ex. 1, Attach. F at 34, ECF No. 20-1. The DOL labeled this

supplemental request FOIA Request No. F2016-819736 ("Request No. 819736"). Def.'s Cross-

Mot., Ex. 2, Attach. HH at 29, ECF No. 20-2.[6] In Request No. 819736, Mr. Jordan sought (1) "a

copy of any documentation in the OALJ's records evidencing or relating to any action of, or

---

[3] Other employees that received the DynCorp emails include Darin Powers, Robert A. Huber, Brian J. Cox, William Imbrie, Martha Huelsbeck, and Aubrey Mitchell. *See* Def.'s Cross-Mot., Ex. 1, Attach. E.

[4] Mr. Jordan does not challenge the DOL's submission of the Littler Mendelson letter as an insufficient response to his request for "a copy of any letter of transmittal, facsimile cover sheet or any other evidence dated at any time in October through December 2015 identifying the person or party who forwarded to Judge Merck's office (or to the OALJ) any version of the [DynCorp] emails." Answer, Ex. 4, 15–16. As such, the Court considers the parties to be in agreement that the DOL's response satisfied this portion of Mr. Jordan's original request.

[5] Mr. Jordan submitted this request at 11:24 PM CST on July 5, 2016, and the DOL received this request at about 12:24 AM EST on July 6, 2016. Pl.'s Corrected Mot. Summ. J. at 8, ECF No. 16. For clarity, the Court will use July 5, 2016, as the date of this request.

[6] All attachments to Def.'s Cross-Mot., Ex. 2 can be found at ECF No. 20-2.

basis in fact or law for, placing under seal the unredacted versions of the [DynCorp] emails" and (2) "a copy of any documentation submitted to the OALJ . . . to oppose the release of any documentation covered by my requests in [Request No. 806591]." Def.'s Cross-Mot., Ex. 1, Attach F at 35, ¶¶ 1–2.

The DOL mistakenly considered this request duplicative of FOIA Request No. F2016-808886—which Mr. Jordan submitted a few hours later and is described below—and thus did not assign this request at the time. Def.'s Cross-Mot., Ex. 2, Declaration of Ramona Branch Oliver ("Oliver Decl.") at 3–5, ¶¶ 7–9, ECF No. 20-2. As a result, the DOL failed to respond within 20 business days as statutorily required. 5 U.S.C. § 552(a)(6)(A)(i). On November 21, 2016, in response to an inquiry[7] about Request No. 819736, the Office of Information Services ("OIS") "initiated a search for the request within the foiarequest@dol.gov mailbox." Oliver Decl. ¶ 10; Def.'s Cross-Mot., Ex. 2, Attach. AA. OIS continued its search from "around November 22[, 2016] through December 1, 2016." *Id.* ¶ 12; Def.'s Cross-Mot., Ex. 2, Attach. CC. The DOL contended in its Answer, filed November 28, 2016, that Request No. 819736 "could [not] be located after a reasonable search of the FOIA request email inbox, the OALJ records, and the FOIA Appeals records." Answer ¶ 12, ECF No. 14. OIS finally located Request No. 819736 on December 2, 2016. Oliver Decl. ¶ 15.

The DOL assigned the request for processing on December 8, 2016. *See* Def.'s Cross-Mot., Ex. 2, Attach. FF at 25, ECF No. 20-2. In response to Mr. Jordan's request seeking documentation relating to placing the DynCorp emails under seal, OALJ provided orders from

---

[7] The inquiry came from Emily S. Whitten, a Senior Attorney for FOIA and Information Law at the DOL's Office of the Solicitor. Def.'s Cross-Mot., Ex. 2, Attach. AA.

ALJ Merck dated February 9, 2016,[8] and January 27, 2016.[9] *See* Def.'s Cross-Mot., Ex. 2, Attach. HH. at 29. In response to Mr. Jordan's request seeking documents opposing Request No. 806591, "OALJ received no document in response to [Request No. 806591] opposing a release under FOIA." *See id.* However, OALJ provided Mr. Jordan a copy of the Littler Mendelson letter in case Mr. Jordan's request "implicate[d] a general preexisting opposition to release of documents within the record before [ALJ] Merck in [the] [DBA Proceedings]." *Id.* at 29–30.

### C.  FOIA Request No. F2016-808886

In June 2016, Mr. Jordan submitted "additional requests and analysis" related to Request No. 806591. Def.'s Cross-Mot., Ex. 1, Attach. G at 38, ECF No. 20-1. The DOL labeled this supplemental request FOIA Request No. F2016-808886 ("Request No. 808886"). *See id.*, Attach. H at 43. This request sought disclosure of segregable portions of the DynCorp emails including (1) the notation "Subject to Attorney Client Privilege" and (2) any language that constituted an express request for legal advice.[10] Compl. ¶ 14, ECF No. 1; Answer, Ex. 6 at 22, ¶¶ 1–2, ECF No. 14-1. Mr. Jordan asserted that by disclosing the "Subject to Attorney Client Privilege" notation in Littler Mendelson's letter (1) DynCorp disclosed purportedly privileged information,

---

[8] The "Order Denying Claimant's Motion to Compel Production of Emails over which Employer Has Asserted Attorney–Client Privilege and Order Denying Claimant's Motion for Sanctions." Def.'s Cross-Mot., Ex. 2, Attach. HH at 29.

[9] The "Order Denying Claimant's Motion Requesting That This Court 'Publish' an Alleged Ex Parte Communication and Order Warning Counsel of the Potential Consequences of Filing Frivolous Motions and Order Denying Claimant's Request for Subpoenas at this Time." Def.'s Cross-Mot., Ex. 2, Attach. HH at 29.

[10] Mr. Jordan only sought language relating to a request for legal advice and clarified that the DOL should exclude "any particular words that would disclose privileged information." Answer, Ex. 6 ¶ 2.

thus waiving any claim to privilege;[11] (2) DynCorp represented to ALJ Merck and Mr. Jordan that the DynCorp emails contained the "Subject to Attorney Client Privilege" notation, requiring DynCorp to now prove that such notation exists therein; (3) DynCorp waived its privilege by re-sending the purportedly privileged emails to Mr. Huber without including Mr. Bellomy in the email; and (4) ALJ Merck's ruling rested on his finding that DynCorp employees expressly sought legal advice in the DynCorp emails, a fact not found on the record that mandated disclosure under 5 U.S.C. § 556(e) of the Administrative Procedure Act ("APA"). Answer, Ex. 6 at 22–24.

Chief ALJ Stephen R. Henley denied Mr. Jordan's request, reiterating ALJ Merck's ruling "that the redacted portions of the [DynCorp] emails are covered by attorney–client privilege." Answer, Ex. 7, at 27. Chief ALJ Henley noted that ALJ Merck had not "ruled on any request to modify his finding" of attorney–client privilege and that ALJ Merck's ruling still stood. *Id.* Thus, Chief ALJ Henley agreed with Ms. Johnson that FOIA Exemption 4 exempted the requested information from disclosure. *Id.* at 26.

### D. FOIA Request No. F2016-813181

On September 1, 2016, Mr. Jordan submitted a fourth FOIA request. *See* Def.'s Cross-Mot., Ex. 1, Attach. M, ECF No. 20-1. The DOL's Adjudicatory Boards ("ARB") labeled this request FOIA Request No. F2016-813181 ("Request No. 813181"). *See* Def.'s Cross-Mot., Ex. 1, Attach. N. This request sought any document that ALJ Merck received in an ex parte communication, any document regarding ALJ Merck's decision to place documents under seal, any document withheld from disclosure because it was under seal, and any document

---

[11] Mr. Jordan argued the redaction of that notation in the version of the DynCorp emails he received, *see* Def.'s Cross-Mot., Ex. 1, Attach. E, ECF No. 20-1, indicated its designation as privileged information, *see* Answer, Ex. 6 at 22–23, ECF No. 14-1.

demonstrating an OALJ determination that attorney–client privilege applied to Mr. Jordan's FOIA requests. Def.'s Cross-Mot., Ex. 1, Attach. M at 89. On September 12, 2016, ARB informed Mr. Jordan that ARB "searched [the] case tracking system and other files and found no material that [met] the parameters of [the] request." Def.'s Cross-Mot., Ex. 1, Attach. N.

On December 1, 2016, the OALJ closed out Request No. 813181 due to Mr. Jordan's failure "to pay the fees and costs associated with processing this request." Def.'s Cross-Mot., Ex. 1, Attach. V. Mr. Jordan does not dispute that he failed to pay the requisite fees; thus, Request No. 813181 has no relevance here.

### E. FOIA Request No. 820511

On December 18, 2016, Mr. Jordan filed his final request on behalf of his client. Def.'s Cross-Mot., Ex. 1, Attach. W. In that request, Mr. Jordan sought from the OALJ "a copy of a portion of the record in the [DBA Proceedings]." *Id.* This request is not at issue here.

### III. PROCEDURAL HISTORY

After exhausting his administrative remedies as required under FOIA, Mr. Jordan filed this case in September 2016. See Compl., ECF No. 1; 5 U.S.C. § 552(a)(6)(C)(i). In his complaint, Mr. Jordan sought "[i]njunctive relief ordering the DOL to disclose to [Mr. Jordan] all previously undisclosed versions of the [DynCorp] [e]mails covered by [Request No. 806591]" and "[j]udgment for reasonable attorneys' fees, if any, expenses, and costs."[12] Compl. at 10–11; Pl.'s Unopposed Mot. Leave Amend Compl., ECF No. 19.

---

[12] In his original complaint, Mr. Jordan also sought "injunctive relief ordering the DOL to refrain from withholding any such documentation under an assertion that such documentation is sealed or subject to an ALJ's determination . . . that the documents are privileged." Compl. ¶ B. Mr. Jordan moves to amend his complaint by no longer seeking this relief. Pl.'s Unopposed Mot.

Mr. Jordan and the DOL each move for summary judgment.[13] *See* Pl.'s Corrected Mot. Summ. J., ECF No. 16; Def.'s Mem. P. & A. Supp. Def.'s Cross-Mot. Summ. J. & Opp'n Pl.'s Corrected Mot. Summ. J. ("Def.'s Mem."),[14] ECF No. 20. The parties' only dispute is whether FOIA Exemption 4 applies to unredacted versions of the DynCorp emails. *See* Pl.'s Corrected Reply Def.'s Opp'n Pl.'s Corrected Mot. Summ. J.; Pl.'s Opp'n Def.'s Cross-Mot. Summ. J. ("Pl.'s Reply") at 3–8, 19, ECF No. 30; Def.'s Reply Pl.'s Opp'n Def.'s Cross-Mot. Summ. J. ("Def.'s Reply") at 6–7, ECF No. 32. On July 24, 2017, the Court ordered Defendant to submit the DynCorp emails for in camera review. *See* July 24, 2017 Minute Order, *Jordan v. U.S. Dep't of Labor*, 16-cv-1868. Defendant submitted the emails in a timely fashion, and the Court has carefully reviewed them.

In addition to his motion for summary judgment, Mr. Jordan has filed the following motions:

- A motion for sanctions under Rule 11, *see* Mot. Sanctions Under Rule 11 ("Pl.'s First Rule 11 Mot."), ECF No. 10;

- A motion to compel depositions of Todd Smyth and Diane Johnson, *see* Mot. Compel Dep. Smyth & Johnson ("Pl.'s Mot. Compel Dep."), ECF No. 24;

- A motion to strike in its entirety the Smyth Declaration, *see* Mot. Strike Smyth's Decl. ("Pl.'s Mot. Strike Smyth Decl."), ECF No. 25;

- A motion to compel the DOL to produce evidence related to the Smyth Declaration, *see* Mot. Compel Produc. Evid. Regarding Smyth Decl. ("Pl.'s Mot. Compel Produc."), ECF No. 29;

---

Leave Amend Compl., ECF No. 19. The Court grants this motion and considers the initial complaint amended.

[13] Mr. Jordan filed an initial Motion for Summary Judgment on November 15, 2016. *See* Mot. Summ. J., ECF No. 9. That motion was superseded by the Corrected Motion for Summary Judgment filed on December 5, 2016. *See* Pl.'s Corrected Mot. Summ. J., ECF No. 16.

[14] Def.'s Mem. is included in Def.'s Cross-Mot., ECF No. 20. For precision, the Court will refer directly to the Mem. when appropriate.

- A motion to strike the Department of Justice's ("DOJ") October 25 motion for an extension of time to respond to the complaint and to vacate the Court's October 26 order granting that motion, *see* Pl.'s Mot. Strike Prohibited Ex Parte Communication & Vacate October 26 Min. Order ("Pl.'s Mot. Vacate"), ECF No. 31;

- A second motion for sanctions under Rule 11, *see* Pl.'s Second Mot. Sanctions Under Rule 11 ("Pl.'s Sec. Rule 11 Mot."), ECF No. 33;

- A motion for the Court to address the APA in its decision, *see* Mot. Regarding APA Basis Decision ("Pl.'s Mot. Regarding APA"), ECF No. 36.

In response, the DOL has filed a motion requesting for the Court to stay all motion practice pending resolution of the parties' summary judgment motions. *See* Def.'s Mot. Stay Pending Summ. J. ("Def.'s Mot. Stay"), ECF No. 26.

Most of the Court's analysis in this opinion regards the parties' substantive disputes. However, the Court also addresses the litany of other motions filed by Plaintiff.

## IV.  LEGAL STANDARDS

"[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *Air Force v. Rose*, 425 U.S. 352, 361 (1976). Congress enacted FOIA so that citizens could discover "what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (quoting *EPA v. Mink*, 410 U.S. 73, 105 (1973) (Douglas, J., dissenting)). After an agency receives a request that "reasonably describes" records being sought, 5 U.S.C. § 552(a)(3)(A), the agency must "conduct[ ] a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). Then, FOIA requires the agency to disclose responsive records revealed by the search, unless one of FOIA's nine statutory exemptions apply to material in the records. *See* 5 U.S.C. § 552(b); *see also Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010) ("[A]gencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory

exemptions."). The nine FOIA "exemptions are 'explicitly exclusive.'" *DOJ v. Tax Analysts*, 492 U.S. 136, 151 (1989) (quoting *FAA Adm'r v. Robertson*, 422 U.S. 255, 262 (1975)). And it is the agency's burden to show that withheld material falls within one of these exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *see also Elliott*, 596 F.3d at 845.

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). When assessing a summary judgment motion in a FOIA case, the district court reviews the matter *de novo*. *See* 5 U.S.C. § 552(a)(4)(B); *Life Extension Found., Inc. v. IRS*, 915 F. Supp. 2d 174, 179 (D.D.C. 2013). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one capable of affecting the substantive outcome of the litigation. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

In withholding documents pursuant to a FOIA exemption, "the agency must provide 'a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released.'" *Gatore v. U.S. Dep't of Homeland Sec.*, 177 F. Supp. 3d 46, 51 (D.D.C. 2016) (quoting *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010)). To satisfy this burden, "an agency may rely on detailed affidavits, declarations, a *Vaughn* index, in camera review, or a combination of these tools." *Comptel v. FCC*, 910 F. Supp. 2d 100, 111 (D.D.C. 2012). Typically, agencies provide courts with the required information via a "combination" of a *Vaughn* index and agency declarations. *See id.* "A *Vaughn* index correlates each withheld document, or portion thereof, with a particular FOIA exemption and the

justification for nondisclosure." *Id.* (citing *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973)).

The agency "affidavits [must] describe the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Moreover, agency affidavits generally enjoy "a presumption of good faith." *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (citing *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). The agency should "disclose as much information as possible without thwarting the exemption's purpose." *Hall v. U.S. Dep't of Justice*, 552 F. Supp. 2d 23, 27 (D.D.C. 2008) (quoting *King v. U.S. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir. 1987)). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'" *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting *Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)). Generally, a reviewing court should "respect the expertise of an agency" and not "overstep the proper limits of the judicial role in FOIA review." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir. 1979).[15]

---

[15] The Court ordered in camera review of the DynCorp emails. Such review is appropriate when "the district judge believes that in camera inspection is needed in order to make a responsible de novo determination on the claims of exemption." *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). Of course, in camera review does not excuse the government of its "obligation to provide detailed public indexes and justifications whenever possible." *Am. Immigration Council v. U.S. Dep't of Homeland Sec.*, 950 F. Supp. 2d 221, 235–36 (D.D.C. 2013) (quoting *Lykins v. U.S. Dep't of Justice*, 725 F.2d 1455, 1463 (D.C. Cir. 1984)).

# V. ANALYSIS

The DOL contends that FOIA Exemption 4 protects the unredacted versions of the DynCorp emails requested in Request No. 806591 from disclosure. *See* Def.'s Mem. at 9, 13–14, ECF No. 20. The DOL specifically argues that FOIA Exemption 4 protects the attorney–client privileged materials at issue here, that the contract information in the DynCorp emails and the fact that they were sent to an in-house attorney for legal advice demonstrates the privileged nature of the DynCorp emails, and that the limited disclosure of the DynCorp emails to ALJ Merck for in camera review did not waive any privilege. *See id.* at 12–14. The DOL also asserts that its initial failure to respond to Mr. Jordan's July 5, 2016 FOIA Request has been mooted by its disclosure of responsive documents. *See id.* at 18–19.

Mr. Jordan argues that FOIA Exemption 4 does not apply to the DynCorp emails. *See* Pl.'s Corrected Mot. Summ. J. at 24–45, ECF No. 16. He contends that the DOL cannot establish that the DynCorp emails were sent to or by someone acting as a lawyer for a privileged purpose. *See id.* at 40–43. Mr. Jordan also argues that the DOL's actions during the DBA Proceedings waived the privilege under various APA provisions, required ALJ Merck to disclose the DynCorp emails, and require this Court to find that the emails are not privileged. *See id.* at 32–40. Mr. Jordan also alleges that DynCorp waived its privilege by failing to justify its claim of privilege and by pretending to make full evidentiary disclosures. *See id.* at 43–45. Finally, Mr. Jordan claims that the DOL's belated response to his July 5, 2016 FOIA request was a "smoke screen" and that the DOL has still not provided documents responsive to this request. *See* Pl.'s Reply at 8–11.

Having reviewed the record and assured itself by inspecting the DynCorp emails in camera, the Court grants summary judgment in favor of the DOL with respect to the Powers

email—the first email in the DynCorp email chain. The DOL properly withheld the unredacted version of the Powers email under FOIA Exemption 4 based on its attorney–client privileged nature. The DOL sufficiently supported its claim of privilege in its Smyth Declaration, *Vaughn* Index, and accompanying attachments. Moreover, DynCorp's judicially compelled disclosure of the unredacted versions of its emails to ALJ Merck for in camera review did not waive its claim to privilege, and the various APA provisions that Mr. Jordan cites have no relevance to this case. Finally, the DOL has made Mr. Jordan's motion regarding the July 5, 2016 FOIA request moot by providing documents responsive to that request. However, upon in camera consideration of the Huber email, the Court concludes that, while the email may be exempt from withholding, the DOL has not adequately explained its basis for withholding. Thus the Court will grant Defendant's motion for summary judgment, except as it pertains to the Huber email. The DOL may either release the DynCorp email chain with the Huber email unredacted, or renew its motion for summary judgment with further justification for that particular email.

The Court denies Mr. Jordan's litany of miscellaneous motions, as described above. Mr. Jordan has failed to identify any sanctionable behavior by Defendant or defense counsel. The Court also denies Mr. Jordan's motions to (1) compel depositions of Todd Smyth and Diane

Johnson;[16] (2) strike in its entirety the Smyth Declaration;[17] (3) compel the production evidence

related to the Smyth Declaration;[18] (4) strike the DOJ's October 25 motion requesting an

---

[16] Mr. Jordan seeks to compel depositions of Mr. Smyth and Ms. Johnson. *See* Pl.'s Mot. Compel Dep. at 2, ECF No. 24. Mr. Jordan claims that he "cannot verify or refute without discovery" the Smyth Declaration and the DOL's Memo and that he requires "a deposition of . . . Todd Smyth and Diane Johnson to be conducted as soon as practicable." *See id.* at 1–2.

"FOIA actions are typically resolved without discovery." *Voinche v. FBI*, 412 F. Supp. 2d 60, 71 (D.D.C. 2006) (citation omitted). Indeed, "[d]iscovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Schrecker v. U.S. Dep't of Justice*, 217 F. Supp. 2d 29, 35 (D.D.C. 2002). Though "FOIA actions are not exempted from the discovery provisions of the Federal Rules of Civil Procedure and the scope of the discovery permitted . . . lies in the [C]ourt's discretion," the Court treats further discovery in FOIA actions skeptically and prefers to permit limited discovery only when truly necessary. *Bureau of Nat'l Affairs, Inc. v. IRS*, 24 F. Supp. 2d 90, 92 (D.D.C. 1998). It is well-established in this district that "a declarant in a FOIA case satisfies the personal knowledge requirement in Rule 56(e) if in his declaration, he attests to his personal knowledge of the procedures used in handling a FOIA request and his familiarity with the documents in question." *Barnard v. U.S. Dep't of Homeland Sec.*, 531 F. Supp. 2d 131, 138 (D.D.C. 2008) (internal citation and alterations omitted); *see also Schmitz v. U.S. Dep't of Justice*, 27 F. Supp. 3d 115, 120 (D.D.C. 2014) (noting that the rule in *Barnard* is "established")

Mr. Smyth's declaration establishes that he has personal knowledge of the procedures used in handling a FOIA request and demonstrates that he is familiar with the documents in question, and thus satisfies Rule 56(e)'s personal knowledge requirement. *See* Smyth Decl. ¶¶ 1, 21–31; *Barnard*, 531 F. Supp. 2d at 138. And although Mr. Jordan implies bad faith by Mr. Smyth and states that "there is very good reason to believe that the facts asserted were not within Smyth's personal knowledge" and "[s]ome factual assertions were very clearly false," he offers no evidence to substantiate his allegations that might warrant further discovery. *See* Mem. P. & A. Supp. Pl.'s Mot. Compel Dep. ("Pl.'s Mot. Compel Deps. Mem.") at 4, ECF No. 24-1. The Court does not view Mr. Jordan's "mere assertions" as a sufficient rationale to allow discovery in this FOIA action. *See Voinche*, 412 F. Supp. 2d at 72. The Court finds the depositions sought here unnecessary and denies Mr. Jordan's motion.

[17] Mr. Jordan moves to strike the Smyth Declaration on the grounds that "[Mr.] Smyth and the DOJ clearly disregarded all safeguards to ensure that Smyth's Declaration was reliable or probative" as outlined by FRCP 56(c)(4). Pl.'s Mot. Strike Smyth Decl. at 2, ECF No. 25.

"The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion." *Canady v. Erbe Elektromedizin GmbH*, 307 F. Supp. 2d 2, 7 (D.D.C. 2004) (citation omitted). "[M]otions to strike are not favored," and the Court maintains "considerable discretion in disposing of motions to strike." *Cobell v. Norton*, 224 F.R.D. 1, 2 (D.D.C. 2004). Indeed,

motions to strike are "often . . . considered 'time wasters.'" *Id.* (quoting 2A Moore's Federal Practice, § 12.21 at 2419).

Mr. Jordan's only germane contention alleges that the Smyth Declaration included facts of which Mr. Smyth had no personal knowledge. *See* Mem. P. & A. Supp. Pl.'s Mot. Strike Smyth's Decl. ("Pl.'s Mot. Strike Smyth Decl. Mem.") at 5–6, ECF No. 25-1. Mr. Jordan notes that "[a]n affidavit or declaration [ ] must be made on personal knowledge . . . and show that the affiant or declarant is competent to testify on the matters stated." *Id.* at 5 (quoting Fed. R. Civ. P. 56(c)(4)); *see also Londrigan v. FBI*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (stating that the "requirement of personal knowledge by the affiant is unequivocal[] and cannot be circumvented"). The Court dealt with this concern in footnote 16 above. Mr. Smyth's job responsibilities "included advising OALJ FOIA personnel on FOIA requests that were assigned to [his] agency component." Smyth Decl. ¶ 1. Mr. Smyth's work competencies indicate that he has the personal knowledge required to submit his declaration, and the extensive record submitted by the DOL presents an exhaustive companion piece to corroborate the facts in the Smyth Declaration and ground Mr. Smyth's knowledge in the attached documents. See Def.'s Cross-Mot., Ex. 1, Attachs. A–W. The Court thus denies Mr. Jordan's motion to strike Smyth's Declaration.

[18] Mr. Jordan moves for this Court to order the DOL to produce documents regarding "(1) any draft or version of Smyth's Declaration or (2) any language that was included in Smyth's Declaration or in any draft or version of Smyth's Declaration." Pl.'s Mot. Compel Produc. at 1, ECF No. 29.

The Court reiterates that "FOIA actions are typically resolved without discovery." *Voinche*, 412 F. Supp. 2d at 71 (citation omitted). "Discovery in FOIA is rare and should be denied where an agency's declarations are reasonably detailed, submitted in good faith and the court is satisfied that no factual dispute remains." *Schrecker*, 217 F. Supp. 2d at 35. Typically in FOIA cases, discovery of the kind Mr. Jordan seeks is "unnecessary and impermissible" where the Court finds, as it does here, "no genuine issue of material fact" exists. *Bureau of Nat'l Affairs*, 24 F. Supp. 2d at 92. Though "FOIA actions are not exempted from the discovery provisions of the Federal Rules of Civil Procedure and the scope of the discovery permitted . . . lies in the [C]ourt's discretion," the Court treats further discovery in FOIA actions skeptically and prefers to permit limited discovery only when truly necessary. *Id.*

Granting this motion would depend on concrete evidence rebutting the "presumption of good faith" accorded to the DOL in submitting the Smyth Declaration. *See Shrecker*, 217 F. Supp. 2d at 35; *Voinche*, 412 F. Supp. 2d at 64. Rather than providing such concrete evidence, Mr. Jordan's motion is littered with speculative claims. Mr. Jordan invokes the "crime–fraud exception," Pl.'s Mot. Compel Produc. at 7, alleges "perjury," *id.* at 9, misrepresents the reason for submitting the Smyth Declaration as seeking to "influence" the Court, *id.*, and claims that the DOJ and DOL are engaged in a "cover up" of ALJ Merck's "criminal conduct," *id.* at 11. These repeated claims never rise above speculation to warrant the kind of discovery Mr. Jordan desires. The Court denies Mr. Jordan's motion to compel the production of evidence regarding the Smyth Declaration.

extension to respond to the Complaint and vacate the Court's October 26 Minute Order granting that motion;[19] and (5) address the APA in the Court's decision.[20] None of these final motions warrants extensive analysis by the Court.

---

[19] Mr. Jordan moves to strike the DOL's motion for an extension to file an answer—deeming that motion a prohibited ex parte communication—vacate the Court's October 26, 2016, Minute Order, and force the DOL to admit each factual allegation in the Complaint. *See* Pl.'s Mot. Vacate, ECF No. 31; Pl.'s Mot. Vacate, Proposed Order ¶ 4, ECF No. 31-1.

The Court reiterates that "[t]he decision to grant or deny a motion to strike is vested in the trial judge's sound discretion." *Canady*, 307 F. Supp. 2d at 7 (citation omitted). "Generally, motions to strike are disfavored by federal courts." *Wiggins*, 853 F. Supp. at 457. Indeed, motions to strike are "often . . . considered 'time wasters.'" *Id.* (quoting 2A Moore's Federal Practice, § 12.21 at 2419). This Court disfavors such motions "because they propose a drastic remedy." *Canady*, 307 F. Supp. 2d at 7–8 (cases collected).

Given that an ex parte communication is defined as a "communication between counsel and the court when opposing counsel is not present," Communication, Black's Law Dictionary (10th ed. 2014), Mr. Jordan's argument that "he did not have an opportunity to respond to" the DOL's motion for an extension does not give the motion "the effect of an ex parte communication," *North v. U.S. Dep't of Justice*, 17 F. Supp. 3d 1, 4 (D.D.C. 2013). Courts in this district have held that communications "filed on the public docket and thus accessible to all . . . cannot, by definition, be considered ex parte communications." *Id.* at 4. Mr. Jordan's lack of access to the motion until after it had already been granted does not render the underlying motion ex parte. *See* Pl.'s Mot. Vacate at 7. Because the underlying motion is not an ex parte communication, the Court denies Mr. Jordan's requested motion to strike the DOL's motion for an extension to file an answer and vacate the Court's October 26, 2016 Minute Order.

Mr. Jordan's claims concerning ex parte communications aside, the Court did not grant the DOL's motion because Mr. Jordan failed to oppose it; the Court granted it because it found a sufficient showing of good cause. In a routine FOIA case like this one, where expedited consideration is not at issue, there were no arguments that would have persuaded the Court against granting the same extension. That is the sole reason the Court did not await Plaintiff's opposition—to preserve the Court's and the parties' resources.

[20] Finally, Mr. Jordan moves for the Court to address "the relevance of the APA to the determination of whether the [DynCorp] [e]mails could have been privileged" in its decision. Pl.'s Mot. Regarding APA at 1, ECF No. 36. This motion attempts to re-litigate the DBA Proceedings under the guise of a FOIA action. *See generally* Pl.'s Mot. Regarding APA. The Court reiterates that under FOIA, the Court may do no more than "enjoin [an] agency from withholding agency records and [] order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). This limited grant of jurisdiction precludes the Court from examining various OALJ actions in separate proceedings under different APA provisions. Mr. Jordan's motion is therefore denied. With that said, none of Plaintiff's arguments convince the Court that the ALJ did not have the authority to conduct an in

### A. Exemption 4 Exempts the Information Requested in the
### DynCorp Emails from Disclosure

Exemption 4 exempts "trade secrets and commercial or financial information obtained from a person and privileged or confidential" matters from disclosure, creating a three-prong test. 5 U.S.C. § 552(b)(4). In non-trade-secrets cases, the "agency must establish that the withheld records are '(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential.'" *Pub. Citizen v. HHS*, 975 F. Supp. 2d 81, 98 (D.D.C. 2013) (citing *Pub. Citizen Health Research Grp. v. FDA*, 704 F.2d 1280, 1290 (D.C. Cir. 1983)). The Court determines the applicability of each of these prongs *de novo*.[21] 5 U.S.C. § 552(a)(4)(B); *see also DOJ v. Reporters Comm. For Freedom of the Press*, 489 U.S. 749, 755 (1989) (clarifying that FOIA "directs the district courts to 'determine the matter *de novo*'" (citing 5 U.S.C. § 552(a)(4)(B))).

#### 1. The Information at Issue is "Commercial" or "Financial"

The DOL maintains that the at-issue information is "commercial" or "financial" because it regards a DynCorp business contract. *See* Def.'s Mem. at 11. Mr. Jordan does not dispute that the information at issue is indeed "commercial" and "financial." *See id.*

The D.C. Circuit has held that the terms "commercial" and "financial" should be given their ordinary meanings, *see Wash. Post Co. v. HHS*, 690 F.2d 252, 266 (D.C. Cir. 1982), which encompass situations in which the submitter has a "commercial interest" in the records, *see, e.g., Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 319 (D.C. Cir. 2006); *Pub.*

---

camera review. It is unclear how Plaintiff believes the ALJ is to satisfy himself that the records were indeed privileged. Plaintiff's strained reading of the various APA provisions would make for more opaque decision-making—not less.

[21] Mr. Jordan repeatedly "attempts to establish an 'arbitrary and capricious' [APA] standard of review of his Complaint." *See* Def.'s Reply at 2, ECF No. 32; *see also* Pl.'s Reply at 2–3, ECF No. 30. This plainly misstates the *de novo* standard of review that governs FOIA cases. 5 U.S.C. § 552 (a)(4)(B).

*Citizen Health Research Grp.*, 704 F.2d at 1290. Under the "commercial interest" standard set

forth in *Baker*, "commercial" or "financial" information includes, for example, a non-profit

organization's reports "describing the operations of its members' nuclear power plants" and lens

manufacturers' health and safety data that bears upon "marketing approval for their products."

*Baker*, 473 F.3d at 319 (citing *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 830

F.2d 278, 281 (D.C. Cir. 1987); *Pub. Citizen*, 704 F.2d at 1290). *Baker* thus gives "commercial

interest" a broad definition, one that includes records that "reveal basic commercial operations,"

"relate to the income-producing aspects of a business," or bear upon the "commercial fortunes"

of the organization. *Baker*, 473 F.3d at 319 (internal quotations and citations omitted).

  The DOL describes the DynCorp emails as pertaining to the "status of operations issues

in connection with a business contract . . . administered and managed by [DynCorp] employees."

*See* Def.'s Mem. at 11, ECF No. 20; *see also* Smyth Decl. ¶ 31, ECF No. 20-1 (portraying the

redacted information as "developments potentially impacting the Worldwide Protective Services

Program contract"); Def.'s Cross-Mot., Ex. 1, Attach. A ("*Vaughn* Index") (characterizing the

redacted information as "concern[ing] the status of operations issues in connection with the

Worldwide Protective Services ('WPS') Program contract").

  The status of operations regarding a business contract easily conforms to *Baker*'s

"commercial interest" standard. Like in *Baker*, the information in the DynCorp emails bears

directly upon the "commercial fortunes" of DynCorp as a company because this information

addresses a business contract of the company. Def.'s Mem. at 11; *Baker*, 473 F.3d at 319

(quoting *Critical Mass Energy Project*, 830 F.2d at 281). Thus, the Court agrees with the DOL

that the information in question is "commercial" or "financial" because it regards DynCorp's

commercial interest in the administration and management of the WPS Program contract.

2.  The Information in Question was Obtained from a Person

A "person," under FOIA, includes "an individual, partnership, corporation, association, or public or private organization other than an agency." 5 U.S.C. § 551(2). The OALJ received the at-issue documents "from counsel for the company [DynCorp] in the Defense Base Act hearing before the OALJ." Def.'s Mem. at 11, ECF No. 20. Mr. Jordan makes no argument to the contrary. *See generally* Pl.'s Corrected Mot. Summ. J., ECF No. 16. Thus, the sole remaining issue is whether the information in the DynCorp emails is privileged.

3.  The Information in the Powers Email is Privileged

The DOL contends that the withheld information is privileged under Exemption 4. *See* Def.'s Mem. at 12–14, ECF No. 20. Specifically, the DOL claims that it contains attorney–client privileged communications. *See* Def.'s Mem. at 12. To substantiate its claim, the DOL asserts that the DynCorp emails had "been marked 'Subject to Attorney Client Privilege' and transmitted to an in-house attorney for [DynCorp] in order to apprise him of developments potentially impacting the Worldwide Protective Services Program contract and to explicitly request the attorney's input and review of the information transmitted." Smyth Decl. ¶ 31; *see also Vaughn* Index (claiming the information as privileged under Exemption 4 in nearly identical language). In conclusory terms, Mr. Jordan responds that there is no "factual basis or legal authority that support[s] the application of any FOIA exemption to Plaintiff's FOIA requests." Pl.'s Corrected Mot. Summ. J. at 28, ECF No. 16. Mr. Jordan contends that the OALJ's "denials of Plaintiff's FOIA requests [ ] were notably devoid of any explanation." *Id.* Mr. Jordan asserts that the OALJ erroneously "contended that FOIA Exemption 4 applied because ALJ Merck purportedly ruled that the [DynCorp] [e]mails were privileged" while "fail[ing] to make any rational connection between FOIA Exemption 4 and the OALJ's purported basis for invoking

such exemption." *Id.* Mr. Jordan insists that "[n]o OALJ representative made any such determination" finding the DynCorp emails privileged, and, consequently, implores the Court to make no such determination now. Def.'s Reply at 10.

"'Privileged' information is generally understood to be information that falls within recognized constitutional, statutory, or common law privileges." *Gen. Elec. Co. v. Air Force*, 648 F. Supp. 2d 95, 101 n.4 (D.D.C. 2009) (citing *Wash. Post Co. v. HHS*, 690 F.2d 252, 267–68, n.50 (D.C. Cir. 1982)). Though "case law examining privilege under Exemption 4 is sparse," Def.'s Mem. at 12, courts have repeatedly found that Exemption 4's "privilege" requirement covers properly-practiced attorney–client privilege, *see Gen. Elec. Co.*, 648 F. Supp. 2d at 101 n.4; *Artesian Indus., Inc. v. HHS*, 646 F. Supp. 1004, 1007–08 (D.D.C. 1986); *Indian Law Res. Ctr. v. U.S. Dep't of Interior*, 477 F. Supp. 144, 149 (D.D.C. 1979). Though "the mere fact that an attorney is listed as a recipient . . . does not make a document protected under [attorney–client] privilege," *Vento v. I.R.S.*, 714 F. Supp. 2d 137, 151 (D.D.C. 2010), confidential disclosures between an attorney and her client regarding factual and legal matters are certainly protected by attorney–client privilege, *see, e.g., Fisher v. United States*, 425 U.S. 391, 403 (1976) ("Confidential disclosures by a client to an attorney made in order to obtain legal assistance are privileged."); *Vento*, 714 F. Supp. 2d at 151 (noting that "[f]actual information provided by the client to the attorney is the essence of privilege"); *Mead Data Cent., Inc. v. Air Force*, 566 F.2d 242, 252 (D.C. Cir. 1977) (stating that attorney–client privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice").

The DOL's justification—as set forth in the Smyth Declaration and *Vaughn* Index and confirmed by the Court's in camera *review*—is sufficiently detailed for the Court to conclude

that FOIA Exemption 4 applies to the Powers email, because it contained privileged communications between an attorney and his client. The DOL describes the DynCorp emails in a detailed manner—though obviously in such a way that does not disclose the information it seeks to protect—and there is nothing in the record to question the presumption of good faith that the Court affords the DOL in its explanation. The DOL explains that the DynCorp emails concerned DynCorp's confidential information regarding a business contract and expressly sought DynCorp's attorney's input and review. Smyth Decl. ¶ 31; *Vaughn* Index. Additionally, the DOL reiterated that the DynCorp emails are "marked 'Subject to Attorney Client Privilege.'" Smyth Decl. ¶ 31; *Vaughn* Index. This description supports the inference that the DynCorp emails concern contractual information that DynCorp wishes to protect and that this contractual information was sent to in-house attorney Christopher Bellomy for his legal advice.

However, the Court's review of the DynCorp emails in camera has revealed that the DOL's justifications are much more applicable to the Powers email than they are to the Huber email. The Powers email itself is labeled "subject to attorney–client privilege;" the Huber email is itself not. The Powers email contains an express request for legal advice; the Huber email does not. Indeed, although the Huber email responds to information in the Powers email and has Mr. Bellomy "cc-ed," it does not necessarily meet the standard for attorney–client privilege—at least as the DOL has articulated its justification to this point.[22] The Court requires further briefing focusing specifically on the DOL's justification to withhold the Huber email before it is prepared to grant summary judgment for either party.

---

[22] "[M]erely copying or 'cc-ing' legal counsel, in and of itself, is not enough to trigger the attorney–client privilege." *Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 630 (D. Nev. 2013).

The Court therefore orders the DOL to provide further justification for withholding with respect to the Huber email (or voluntarily release it). With respect to the Powers email, the Court's in camera review confirms that the content of the information and the reason it was communicated satisfy the demands of attorney–client privilege.

## B. DynCorp Did Not Waive its Attorney–Client Privilege

Mr. Jordan claims that, even if the communications were privileged when originally made, DynCorp subsequently waived any claim to privilege in three ways. First, he argues that DyncCorp waived the privilege by submitting the DynCorp emails to the OALJ in the DBA Proceedings.[23] *See* Pl.'s Corrected Mot. Summ. J. at 32–40, ECF No. 16. Second, Mr. Jordan contends that DynCorp waived its claim of privilege by failing to ever fully justify its invocation of privilege. *See* Pl.'s Corrected Mot. Summ. J. at 43. Mr. Jordan claims that DynCorp failed to properly "identify recipients of the [DynCorp] [e]mails in [its] [r]equired [d]isclosures" and "failed to provide information about the purpose of the [DynCorp] [e]mails that would support a finding that the [DynCorp] [e]mails were privileged." *Id.* at 43–44. Mr. Jordan asserts that this insufficient provision of information regarding the DynCorp emails waives any privilege that may be applicable to them. *See id.* Finally, Mr. Jordan argues that "[DynCorp]'s failure to show

---

[23] In conclusory terms, Mr. Jordan asserts that DynCorp waived its privilege when non-attorney DynCorp managers forwarded the DynCorp emails among each other, without including Mr. Bellomy in the emails. Pl.'s Corrected Mot. Summ. J. at 41. Such forwarding does not waive privilege. Mr. Bellomy was an attorney to DynCorp—not any or all of the individual employees identified by Plaintiff—giving advice to DynCorp, and thus DynCorp holds the attorney–client privilege over the documents. *See Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981). Internal distribution of privileged materials among corporate managers does not automatically waive attorney–client privilege; the DynCorp managers who circulated Mr. Bellomy's advice did not disclose that advice to any "third party." *See In re United Mine Workers of Am. Employee Ben. Plans Litig.*, 159 F.R.D. 307, 313 (D.D.C. 1994).

that privilege applied before ALJ Merck ruled on this issue in his February 9[, 2016] decision should be found to constitute a waiver of the privilege." *Id.* at 44.[24]

Conversely, the DOL argues that submission of the DynCorp emails to ALJ Merck for in camera review did not waive DynCorp's claim of attorney–client privilege. *See* Def.'s Mem. at 20. The DOL asserts that its submission made clear that DynCorp "did not intend to waive . . . privilege by submitting the documents to" ALJ Merck and that this limited disclosure of the at-issue documents did not "destroy[] the attorney–client privilege." *Id.* at 20–21. Additionally, the DOL argues that ALJ Merck properly found the DynCorp emails privileged during the DBA Proceedings and that, as a result, no waiver occurred. *See id.* at 19–20.

Mr. Jordan's arguments come up short. The submission of documents for judicially-compelled in camera review comports with the principles underlying privilege; that submission itself does not waive privilege.

Courts in this district recognize that "disclosure of documents inconsistent with the confidential nature of the attorney–client relationships waives the attorney–client privilege" with respect to "all other communications related to the same subject matter." *In re United Mine Workers of Am. Employee Benefit Plans Litig.*, 159 F.R.D. 307, 310 (D.D.C. 1994) (citing *In re Sealed Case*, 877 F.2d 976, 980–81 (D.C. Cir. 1989); *In re Sealed Case*, 676 F.2d 793, 818 (D.C. Cir. 1982); *Chubb Integrated Sys. v. Nat'l Bank of Wash.*, 103 F.R.D. 52, 63 (D.D.C. 1984)). In

---

[24] Again in conclusory terms, Mr. Jordan also argues that DynCorp waived its privilege by pretending to make full disclosures. *See* Pl.'s Corrected Mot. Summ. J. at 45. To support this argument, Mr. Jordan cites a single, non-FOIA-related case that endorses a court's choice to "imply a waiver of privilege" when a party elects to participate in a voluntary disclosure program and makes false "pretense[s] of unconditional disclosure." *In re Kellogg Brown & Root, Inc.*, 796 F.3d 137, 147 (D.C. Cir. 2015) (quoting *In re Sealed Case*, 676 F.2d at 823). Mr. Jordan's argument does not apply, because there is simply no evidence of any such pretense.

certain situations, the disclosure of information to the government can waive privilege. *See, e.g., Artesian Industries*, 646 F. Supp. at 1008 (inadvertently including an interoffice memorandum marked "CONFIDENTIAL" along with other requested documents waived privilege); *Underwater Storage, Inc. v. U.S. Rubber Co.*, 314 F. Supp. 546, 548–49 (D.D.C. 1970) (turning over a privileged letter pursuant to a consent order for examination waived attorney–client privilege, regardless of plaintiff's intent). However, in those situations waiver is inferred based on the voluntariness of a party's disclosure of information. *Chubb*, 103 F.R.D. at 63 (citing *In re Subpoenas Duces Tecum*, No. 83–2116, slip op. at 5 (D.C. Cir. July 10, 1984); *Transamerica Computer Co., Inc. v. IBM Corp.*, 573 F.2d 646, 650–51 (9th Cir. 1978)). "Voluntary disclosure means the documents were not judicially compelled." *Chubb*, 103 F.R.D. at 63 n.2. As the Supreme Court held in *United States v. Zolin*, 491 U.S. 554, 568 (1989), the "disclosure of allegedly privileged materials to the district court for purposes of determining the merits of a claim of privilege does not have the legal effect of terminating the privilege."

The principle established in *Zolin* logically applies equally to ALJs. ALJs are judicial actors who, in the matters pending before them, must make determinations on the propriety of privilege claims asserted by the parties before them. There is no basis to conclude that they may not avail themselves of in camera review as a useful tool in making those determinations. If submission of information to such review jettisoned privilege, the review would have no purpose, because any privileged document submitted for in camera review would be immediately eligible for full disclosure under FOIA. Nor is the submission of privileged documents for in camera review "inconsistent with the confidential nature of the attorney–client relationship." *In re United Mine Workers*, 159 F.R.D. at 310.

In no way did DynCorp act "inconsistent with the confidential nature of the attorney–client relationships." *See id*. Mr. Jordan unjustifiably disregards the fact that DynCorp submitted its emails for in camera review to validate its claim of privilege in accordance with an ALJ order. *See* Def.'s Cross-Mot., Ex. 1, Attach. D at 25, ECF No. 20-1 (stating that the submission of the DynCorp emails was "in response to the Administrative Law Judge's October 19, 2015 [o]rder" requiring "[DynCorp] to provide an unredacted copy of the privileged communication . . . for in camera inspection"); Joint Appendix[25] ("Pl.'s App."), Attach. 2 at 16, ECF No. 34-2 (explaining that ALJ Merck's order for DynCorp's counsel to submit the DynCorp emails for in camera review occurred during an October 19, 2015 conference call involving both Ms. Jordan's and DynCorp's representatives); Def.'s Cross-Mot., Ex. 1, Attach. Q at 114–15 (reiterating that ALJ Merck found it "abundantly clear" that the DynCorp emails "were subject to attorney client privilege"). DynCorp's submission was consistent with attorney–client confidentiality and did not constitute a waiver of privilege. *United Mine Workers*, 159 F.R.D. at 310. Indeed, ALJ Merck found that the attorney–client privilege applied, bolstering the Court's holding that the review process alone did not waive the privilege. Pl.'s App., Attach. 2 at 13.

Furthermore, the facts of the case undercut Mr. Jordan's argument that DynCorp waived privilege by failing to substantiate its claim upfront. The text of the February 9 order confirms that, prior to the February 9 order: Mr. Jordan was seeking emails "over which [DynCorp] asserted attorney–client privilege," *see* Pl.'s App., Attach. 2 at 15, ECF No. 34-2; Mr. Jordan had

---

[25] The Court notes the DOL's Response Regarding the Joint Appendix ("Def.'s Resp. Regarding J.A."), ECF No. 35, expressly disavows that the DOL "agreed upon the contents of such an appendix or consented to its filing" and "maintains that the documents included in [Pl.'s App.] are not relevant or material to the resolution of the parties' cross motions for summary judgment." Def.'s Resp. Regarding J.A. As such, the DOL contests labeling this appendix a "Joint Appendix." *Id.* The Court agrees.

received "an amended privilege log to address Claimant's concerns about the [c]ompany's description of the privileged communication," *id.* at 16; DynCorp's Opposition Memorandum in the DBA Proceedings and the Littler Mendelson letter submitted to ALJ Merck for in camera review included a detailed description of the DynCorp emails and the reason for considering them privileged similar to the rationale espoused in the Smyth Declaration and *Vaughn* Index, *see id.* at 16; and DynCorp's "management-level employees expressly sought legal advice from [DynCorp]'s in-house counsel" in the DynCorp emails, *id.* at 18. In short, DynCorp consistently substantiated and maintained its claim of privilege throughout the DBA Proceedings. Thus, the Court finds that DynCorp did not waive its attorney–client privilege.

### C. Defendant Provided All "Reasonably Segregable" Portions of the Powers Email

In response to Request No. 806591, the DOL disclosed a partially redacted version of the DynCorp emails that provided unredacted emails from Mr. Imbrie, Mr. Powers and Mr. Huber sent the morning of July 31, 2013, as well as email headings from the Huber email and the Powers email.[26] *See* Def.'s Cross-Mot., Ex. 1, Attach. E, ECF No. 20-1. However, the DOL completely redacted the text of the Huber email and the Powers email. *See id.* In Request No. 808886—filed in relation to the redacted emails Mr. Jordan received in response to Request No. 806591—Mr. Jordan sought the disclosure of the "notation 'Subject to Attorney Client Privilege' and non-privileged information supporting [the] contention that . . . [DynCorp] management 'expressly sought legal advice.'" Pl.'s Reply at 3, ECF No. 30; *see also* Def.'s Cross-Mot., Ex. 1, Attach. G. The DOL maintains that the redacted emails already submitted to Mr. Jordan contain everything that could be disclosed and that segregability would "not [be] applicable to the

---

[26] The Huber email was sent at 8:20 AM on July 31, 2013, and the Powers email was sent at 5:39 PM on July 30, 2013. Def.'s Cross-Mot., Ex. 1, Attach. E.

redacted portions" of the DynCorp emails. Smyth Decl. ¶ 27. The DOL further maintains that "any attempt at further segregating" the DynCorp emails "would provide little or no informational value," and the privileged "material is inextricably intertwined" with any unprivileged material. *Id.* Because the Court denies Defendant's motion for summary judgment with respect to the Huber email, its segregability analysis is confined to the Powers email.

FOIA requires disclosure of "any reasonably segregable portion" of an otherwise-exempt record. 5 U.S.C. § 552(b). An agency need not disclose non-exempt portions of records that "are inextricably intertwined with exempt portions." *Kurdyukov v. U.S. Coast Guard*, 578 F. Supp. 2d 114, 128 (D.D.C. 2008); *see also Mead Data*, 566 F.2d at 260. "[T]o demonstrate that all reasonably segregable material has been released, the agency must provide a 'detailed justification' for its non-segregability," but "the agency is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Office of U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data*, 566 F.2d at 261). Simple "conclusory assertions" that all "reasonably segregable" information has been disclosed "fall short of the specificity required for a court to properly determine whether the non-exempt information is, in fact, not reasonably segregable." *Branch v. FBI*, 658 F. Supp. 204, 210 (D.D.C. 1987) (citing *Mead Data*, 566 F.2d at 260). Additionally, the Court "has the obligation to consider the segregability issue *sua sponte*, regardless of whether it has been raised by the parties," *Johnson*, 310 F.3d at 776 (citing *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999)), and "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof," *Schiller v. NLRB*, 964 F.2d 1205, 1210 (D.C. Cir. 1992) (quoting *Powell v. U.S. Bureau of Prisons*, 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991)).

With that said, the law of segregability does not require a court to "order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data*, 566 F.2d at 261 n.55; *see also Brown v. U.S. Dep't of Justice*, 734 F. Supp. 2d 99, 110–11 (D.D.C. 2010) (quoting *Assassination Archives And Research Center v. C.I.A.*, 177 F. Supp. 2d 1, 9 (D.D.C. 2001), *order amended*, (Oct. 25, 2001) and *judgment aff'd*, 334 F.3d 55 (D.C. Cir. 2003)). In the context of documents exempted by the attorney–client privilege, it is sufficient for an agency's declaration to provide sufficient detail for a court "to conclude that those isolated words or phrases that might not be redacted for release would be meaningless." *Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 221 (D.D.C. 2005). "If the rule were otherwise, courts would be required to parse emails, letters and general conversations on a statement-by-statement basis to determine which sentences or even clauses were protected and which were not. This would only increase the costs and lengthen the delays in litigation even beyond what they are today." *Kimberly-Clark Worldwide Inc. v. First Quality Baby Prod. LLC*, 2015 WL 13022282, at *3 (E.D. Wis. Apr. 9, 2015).

As a general matter, the DOL's *Vaughn* Index and attendant affidavits provide a sufficiently "detailed justification" for the DOL's position that it has released all non-segregable materials contained in the Powers email, or that release of stray material would be meaningless. The DOL bolsters its assertion that "[s]egregability is not applicable to the redacted portions" with an in-depth explanation for withholding the information in its entirety. *See* Smyth Decl. at 10–12, ¶¶ 27–31; *Vaughn* Index. The DOL details the precise rationale supporting FOIA Exemption 4's application to the Powers email. *See id.* The *Vaughn* Index first explains that the Powers email is "commercial" or "financial" because it "concern[s] the status of operations

issues in connection with the WPS Program contract," "the submitter of the information has a commercial interest in" the Powers email, and the Powers email "relate[s] to business or trade within the ordinary meanings of those terms." *Vaughn* Index. Finally, the *Vaughn* Index explains that the Powers email is privileged because it was "transmitted to an in-house attorney for [DynCorp] in order to apprise him of developments potentially impacting the contract," "explicitly request[ed] the attorney's input and review of the information transmitted," and was "clearly marked 'Subject to Attorney Client Privilege.'" *Vaughn* Index.

The specific materials that Mr. Jordan seeks—any statement by a DynCorp employee "that constituted an express request for legal advice" and the notation "Subject to Attorney–Client Privilege," Compl. ¶ 7—were justifiably not produced. The first category is, by its very nature, not segregable. Any "express requests for legal advice" made by DynCorp employees to DynCorp's lawyer would themselves be privileged *because they were express requests for legal advice*. *See FTC v. Boehringer Ingelheim Pharm., Inc.*, 180 F. Supp. 3d 1, 30 (D.D.C. 2016) (suggesting that "express requests for or provision of legal advice" are prototypically privileged); *see also P.&B. Marina, Ltd. v. Logrande*, 136 F.R.D. 50, 53 (E.D.N.Y. 1991), *aff'd sub nom. P&B Marina Ltd. v. LoGrande*, 983 F.2d 1047 (2d Cir. 1992) (noting that attorney–client privilege "protects communications that . . . [are] express requests for legal advice").

And, assuming without deciding that it was not itself privileged, the DOL properly withheld the notation "Subject to Attorney–Client Privilege." Beyond bolstering Defendant's claim that it shows the communications were privileged, the sentence "Subject to Attorney Client Privilege" is "an isolated . . . phrase[] . . . [of which] release would be meaningless." *Nat'l Sec. Archive Fund, Inc. v. CIA*, 402 F. Supp. 2d 211, 221 (D.D.C. 2005). Mr. Jordan's request for the emails with this notation unredacted is transparently not an attempt to ascertain "what [his]

government is up to," *see Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 171 (2004), but is instead a fishing expedition with which he hopes to catch the government red-handed. Stated differently, after he was presented with sworn evidence that the documents contained the notation, he responded: "prove it." But the government's affiant is entitled to a presumption of good faith. *See SafeCard Servs., Inc.*, 926 F.2d at 1200. Without any evidence rebutting that presumption, the Court would have no reason to question that the privilege notation alone—which, by Mr. Jordan's own logic sheds no light on the substantive contents of the privileged conversation—is a boilerplate, "isolated" phrase in an otherwise-privileged document, of which "release would be meaningless." *See Nat'l Sec. Archive Fund, Inc.*, 402 F. Supp. 2d at 221. Indeed, the Court's in camera review confirms this to be the case. Regardless, the Court will not adopt a rule that requires agencies "to parse [privileged] emails, letters and general conversations on a statement-by-statement basis to determine which sentences or even clauses were protected and which were not" when there is no indication that the clauses have any substantive meaning. *See Kimberly-Clark Worldwide Inc.*, 2015 WL 13022282, at *3.

Taken together, the DOL "supplied a 'relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlate[ed] those claims with the particular part of [the] withheld document," and demonstrated that the release of certain portions would be meaningless. *Hertzberg v. Veneman*, 273 F. Supp. 2d 67, 90 (D.D.C. 2003) (quoting *Schiller*, 964 F.2d at 1210); *Nat'l Sec. Archive Fund, Inc.*, 402 F. Supp. 2d at 221. This justification is not "conclusory" or "vague" and represents the DOL's good faith effort to segregate privileged and non-privileged information. The DOL reviewed the DynCorp email chain, found the Powers email privileged, redacted that privileged information and disclosed all other information—except the Huber email, which will be subject to further litigation—to Mr.

Jordan. Def.'s Cross-Mot., Ex. 1, Attach. E. This precise segregation, coupled with the DOL's *Vaughn* Index, indicated to the Court that the DOL provided all meaningful, reasonably segregable information to Mr. Jordan. The Court's in camera review confirmed the DOL's justifications with respect to the Powers email. Because the DOL "show[ed] with reasonable specificity why material could not be segregated," the DOL has "[met] its burden under FOIA." *Billington v. U.S. Dep't of Justice*, 301 F. Supp. 2d 15, 24 (D.D.C. 2004) (citing *Armstrong v. Executive Office of the President*, 97 F.3d 575, 579 (D.C. Cir. 1996)).

### D. Defendant Satisfactorily Responded to Request No. 819736

In Request No. 819736, submitted on July 5, 2016, Mr. Jordan sought (1) documentation evidencing or providing a factual or legal basis for "the unredacted versions of the [DynCorp] emails" being placed under seal and (2) "documentation submitted to the ALJ" opposing FOIA Request No. 806591. *See* Def.'s Cross-Mot., Ex. 1, Attach. F at 35, ECF No. 20-1. Mr. Jordan asserts that the DOL "failed to respond at all" to Request No. 819736 and that this failure to respond means that the DOL must disclose the documents at issue. *See* Pl.'s Corrected Mot. Summ. J. at 23, ECF No. 16. Furthermore, Mr. Jordan alleges that the "DOJ failed to cite any evidence establishing that the DOL actually did respond at all . . . to the July 5 [r]equest in any manner that could constitute a response under FOIA . . . ." Pl.'s Reply at 8, ECF No. 30. Mr. Jordan asserts that this failure to respond necessitates the full disclosure of the documents covered by Request No. 819736. Pl.'s Mot. Summ. J. at 23–24.

FOIA requires an agency to respond to a FOIA request within 20 business days. 5 U.S.C. § 552(a)(6)(A)(i); Pl.'s Corrected Mot. Summ. J. at 23. In the context of a federal court case, if the agency has, "however belatedly, released all nonexempt material" the court has "no further judicial function to perform under the FOIA." *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir.

33

1987) (quoting *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982)); *see also Heily v. DOD*, 896 F. Supp. 2d 25, 37 (D.D.C. 2012) (plaintiff's receipt of FOIA-requested documents while litigation was still pending mooted plaintiff's FOIA claims).

Here, the DOL did not respond to Request No. 819736 until December 14, 2016, which was after Mr. Jordan filed his motion for summary judgment and well outside of the statutory timeframe.[27] *See* Def.'s Statement Material Facts Which Def. Contends No Genuine Issue ("Def.'s Statement") ¶ 29, ECF No. 20;[28] Def.'s Cross-Mot., Ex. 2, Attach. HH at 29–30, ECF No. 20-2. But regardless of the DOL's lag in responding to Mr. Jordan's request, it has released the documents requested in Request No. 819736. *See* Def.'s Cross-Mot., Ex. 2, Attach. HH at 29–30. To be specific, the DOL conducted a search, located 26 pages of responsive documents, reviewed them, and provided them to Mr. Jordan unredacted. *See* Def.'s Statement ¶ 29. In response to Mr. Jordan's request seeking a basis for placing the DynCorp emails under seal, the DOL enclosed ALJ Merck's February 9, 2016 order[29] and ALJ Merck's January 27, 2016

---

[27] The DOL contends that FOIA Request Nos. 819736 and 808886 were received "on the same date," "within two hours of each other outside of regular business hours, were addressed to the same DOL employee, were related in subject matter," "were brief, and appeared to be the same or substantially similar." Def.'s Statement ¶ 24, ECF No. 20. As such, the DOL presumed the requests were "duplicative," *id.* ¶ 26, and the DOL did not respond to or assign Request No. 819736 at that time, *id.* ¶ 26. However, even a cursory review of both requests would have revealed salient differences between the information sought in FOIA Request Nos. 819736 and 808886. *Compare* Def.'s Cross-Mot., Ex. 1, Attach. F at 35, ¶¶ 1–2 *with* Def.'s Cross-Mot., Ex. 1, Attach. G at 39, ¶¶ 1–2. With that said, there is no indication that this oversight was due to bad faith rather than inattentiveness.

[28] Def.'s Statement is included in Def.'s Cross-Mot., ECF No. 20. For precision, the Court will refer directly to the Statement when appropriate.

[29] The "Order Denying Claimant's Motion to Compel Production of Emails over which Employer Has Asserted Attorney–Client Privilege and Order Denying Claimant's Motion for Sanctions." Def.'s Cross-Mot., Ex. 2, Attach. HH at 29. This order had already been issued to Mr. Jordan on February 9, 2016 in, relation to the OALJ DBA Proceedings. *See* Def.'s Reply at 10 n.15, ECF No. 32.

order.[30] Def.'s Cross-Mot., Ex. 2, Attach. HH at 29. In response to Mr. Jordan's request seeking

documentation opposing Request No. 806591, the DOL found "no document in response to

FOIA Number F2016-806591 opposing a release under FOIA." *Id.* However, the DOL enclosed

the Littler Mendelson letter[31] dated October 28, 2015 on the basis that Mr. Jordan's request "may

implicate a general preexisting opposition to release of documents within the record before Judge

Merck" in the DBA Proceedings. *Id.* at 29–30. Though the DOL's response came five months

after the request, the DOL "processed [Request No. 819736] and provided all non-privileged

documents that were responsive to the request," thus "fulfill[ing] its obligation under FOIA

despite the delay in processing."[32] Def.'s Reply at 11, ECF No. 32. Therefore, Mr. Jordan's

claims in relation to Request No. 819736 are denied as moot. *See, e.g. Tijerina*, 821 F.2d at 799.

**E. Mr. Jordan's Defense Base Act Arguments are Beyond the Scope of this Litigation**

Mr. Jordan argues that there are additional issues before the Court related to his DBA

Proceedings. *See* Pl.'s Corrected Mot. Summ. J. at 12–15, 18–19, 25–40, ECF No. 16. Mr.

Jordan argues that the OALJ failed to establish that Exemption 4 applied, *see* Pl.'s Reply at 4,

ECF No. 30, that the conclusions and findings supporting the DOL's denials of Mr. Jordan's

FOIA requests were "unwarranted by the facts" and "arbitrary, capricious, [and] an abuse of

discretion" under the APA, *see id.* at 4–5, that the OALJ was required to "determine the

---

[30] The "Order Denying Claimant's Motion Requesting That This Court 'Publish' an Alleged Ex Parte Communication and Order Warning Counsel of the Potential Consequences of Filing Frivolous Motions and Order Denying Claimant's Request for Subpoenas at this Time." Def.'s Cross-Mot., Ex. 2, Attach. HH at 29.

[31] The Littler Mendelson letter had already been issued to Mr. Jordan on June 28, 2016, in response to Request No. 806591. *See* Def.'s Cross-Mot., Ex. 1, Attachs. C–D.

[32] Plaintiff seems to argue that these documents are not responsive to his request. Regardless, Plaintiff has not alleged that any other responsive documents exist that were not provided to him.

[DynCorp] [e]mails *were* privileged" but failed to do so, *see id.* at 5, and that "the OALJ's denial of FOIA Request 808886 was blatantly arbitrary and capricious and an abuse of discretion," *id.* at 5. However, all of these issues are beyond the scope of this FOIA litigation.

Mr. Jordan appears to be attempting to use this FOIA action to re-litigate issues of the DBA Proceedings, but that is outside the scope of the Court's review under FOIA. FOIA only empowers the Court "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B). The Court may not use FOIA to revisit the OALJ's actions in the DBA Proceedings. Moreover, the Court is not to review the basis for withholding provided by the agency at the administrative level. *See Shapiro v. U.S. Dep't of Justice*, 153 F. Supp. 3d 253, 269 n.6 (D.D.C. 2016) (explaining that "an agency may invoke a FOIA exemption for the first time before the district court," despite not having invoked the exception at the administrative level). Therefore, the Court dismisses Mr. Jordan's various claims and contentions raised in his motion for summary judgment regarding the events of his DBA Proceedings or at the administrative level.

### F.  The Court Denies Mr. Jordan's Rule 11 Motions Because Neither Motion Identifies Sanctionable Behavior

#### 1.  Mr. Jordan's First Rule 11 Motion

Mr. Jordan first moved for sanctions on the basis that the DOL did not provide a legal or factual basis for its motion for extension of time to file an answer.[33] Pl.'s First Rule 11 Mot. at 1,

---

[33] The Court notes that Mr. Jordan's October 16, 2016 communication with DOJ Attorney Jason Cohen suggests that Mr. Jordan satisfied Rule 11's "safe harbor" provision. *See* Fed. R. Civ. P. 11(c)(2); Pl.'s First Rule 11 Mot., Ex. 1 at 5, ECF No. 10-1. That communication occurred more than 21 days before Mr. Jordan filed this Rule 11 motion. Fed. R. Civ. P. 11(c)(2); Pl.'s First Rule 11 Mot.; Pl.'s First Rule 11 Mot., Ex. 1 at 5. The fact that DOL does

ECF No. 10; Def.'s First Mot. Extension Time Answer or Otherwise Resp. Compl. ("Def.'s Mot. Extension Answer"), ECF No. 5; October 26, 2016 Minute Order. Because the Court granted the DOL's motion, Mr. Jordan asks the Court to "reverse [its] October 26 order and issue an order finding that [the DOL] admitted each factual allegation in the Complaint." Pl.'s First Rule 11 Mot. at 12.

Mr. Jordan specifically argues that the DOL's counsel failed to identify or address the controlling statute governing the action before the Court. *See* Pl.'s First Rule 11 Mot. at 5. He also argues that the DOL's implicit contention that it had shown good cause for the requested extension was not warranted by existing law or by a nonfrivolous argument. *See id.* at 6. Third, Mr. Jordan asserts that the DOL's counsel failed to comport with D.C. Civil Rule 7(m) by making no effort "to narrow the areas of disagreement" between the parties. *See id.* at 7. Fourth, Mr. Jordan claims that the DOL's counsel failed to include in its motion required safeguards against frivolousness and ex parte communications. *See id.* at 9. Fifth, Mr. Jordan claims that the DOL's counsel ensured that Mr. Jordan would be denied notice of and opportunity to respond to the DOL's motion. *See id.* at 10. Finally, Mr. Jordan argues that the DOL deserves to be sanctioned on the basis that its motion was filed for a clearly improper purpose. *See id.* at 11.

The Court denies Mr. Jordan's first motion for Rule 11 sanctions because Mr. Jordan (1) ignores the DOL's specific statement that FOIA governs this case; (2) misstates that this Court found no showing of good cause in granting the DOL's motion; (3) misunderstands the requirements imposed by D.C. Civil Rule 7(m); (4) asks for safeguards against frivolousness and ex parte communications when the DOL's motion contained neither; and (5) unjustifiably

---

not challenge this assumption strengthens this inference. *See generally* Def.'s Opp'n Pl.'s First Rule 11 Mot. Thus, the Court does not consider whether Mr. Jordan failed to satisfy the "safe harbor" provision in making this motion.

conjures bad faith based, for example, on the DOL's mistaken assumption that Mr. Jordan received notice of its motion via CM/ECF.

Under Federal Rule of Civil Procedure 11(b), courts may impose sanctions if "a pleading, written motion, or other paper . . . [is] presented for any improper purpose[;] . . . the claims, defenses, and other legal contentions therein are [un]warranted by existing law[;] . . . the allegations and other factual contentions have [no] evidentiary support[; or] the denials of factual contentions are [un]warranted on the evidence[.]" The Court applies "an objective standard of reasonable inquiry on represented parties who sign papers or pleadings." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 554 (1991). Rule 11 is designed to ensure that allegations made in filings "are supported by a sufficient factual predicate at the time that the claims are asserted." *City of Yonkers v. Otis Elevator Co.*, 106 F.R.D. 524, 525 (S.D.N.Y. 1985) (emphasis removed). As such, Rule 11 "states unambiguously that [the attorney] must conduct a 'reasonable inquiry' or face sanctions." *Bus. Guides*, 498 U.S. at 548.

In deciding on a Rule 11 motion, courts consider (1) whether each presenting attorney "conducted a reasonable inquiry," (2) whether each presenting attorney "determined that [the] papers filed with the court are well grounded in fact [and] legally tenable," and (3) whether the papers were "interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990). This Court has "discretion to determine both whether a Rule 11 violation has occurred and what sanctions should be imposed if there has been a violation." *Cobell v. Norton*, 211 F.R.D. 7, 10 (D.D.C. 2002) (internal quotations omitted). Under Rule 11(c)(1), if a rule has been violated, the court may impose sanctions on "any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "The sanction should be imposed on the persons—whether attorneys . . . or parties—who have violated the rule or may be

determined to be responsible for the violation." Fed. R. Civ. P. 11(c)(1) advisory committee's note to 1937 amendments (subdivisions (b) and (c)); *see also Reynolds v. U.S. Capitol Police Board*, 357 F. Supp. 2d 19, 23–24 (D.D.C. 2004). Courts do not impose Rule 11 sanctions lightly; such sanctions are an extreme punishment for filing pleadings that frustrate judicial proceedings. *See Henok v. Chase Home Fin., LLC*, 926 F. Supp. 2d 100, 104 (D.D.C. 2013). As such, the purposes of Rule 11 include "protect[ing] the court from frivolous and baseless filings that are not well grounded [or are] legally untenable." *Cobell*, 211 F.R.D. at 10.

Mr. Jordan's argument that the DOL's counsel failed to identify or address the controlling statute governing the action before the Court ignores clear language in the DOL's motion. *See* Pl.'s First Rule 11 Mot. at 5; Def.'s Mot. Extension Answer at 1, ECF No. 5. The DOL acknowledged that this case was brought "under the Freedom of Information Act," and the motion demonstrated the DOL's familiarity with FOIA's thirty-day response requirement by referencing the date of service—September 28, 2016—the deadline to respond thirty days later, and the showing of "good cause." *See id.* ¶ 2; Def.'s Mot. Extension Answer, Proposed Order at 1, ECF No. 5-1; 5 U.S.C. § 552(a)(4)(C). Furthermore, the DOL did not "[choose] to eliminate the statutory requirement in FOIA to obtain the benefit of the FRCP rule." Pl.'s First Rule 11 Mot. at 5. The DOL sought, under Rule 6, to obtain a permitted extension beyond FOIA's thirty-day requirement. 5 U.S.C. § 552(a)(4)(C). Mr. Jordan's first argument provides no grounds for Rule 11 sanctions.

Mr. Jordan's second argument that the DOL's implicit contention of good cause had no basis hinges on the assumption that the Court found no showing of good cause. *See* Pl.'s First Rule 11 Mot. at 6. Mr. Jordan alleges that the DOL failed to "explicitly" show good cause and instead "asserted that legal contention implicitly" with a "cursory" and "boilerplate" explanation

for its request for an extension. *Id.* (italics omitted). In particular, Mr. Jordan implies that the DOL could not have shown good cause given that Mr. Jordan's "FOIA request pertain[ed] to a single document consisting of only three pages that the [DOL] had identified and located many months ago." *Id.* at 7. However, the Court considered the DOL's explanation that "[a]dditional time [was] necessary to complete the review and research, provide undersigned counsel with a litigation report, and draft and review an appropriate response to the Complaint." Def.'s Mot. Extension Answer ¶ 2. Though the DynCorp emails indeed comprise only a few pages, Mr. Jordan's Complaint pertained to four separate FOIA requests, two requests for reconsideration, and two appeals, and Mr. Jordan "failed to attach to the Complaint any of the alleged FOIA requests, reconsideration requests, or appeals." *See* Def.'s Opp'n Mot. Sanctions Under Rule 11 ("Def.'s Opp'n Pl.'s First Rule 11 Mot.") at 4, ECF No. 17. The Court had ample basis to conclude that preparing an adequate response to the Complaint required additional time. *See* Def.'s Opp'n Pl.'s First Rule 11 Mot. at 4; *see generally* Compl. Although Defendant's motion did not consist of the excessive briefing characteristic of Plaintiff's filings, the limited information provided was more than sufficient to justify the routine relief sought—a 30 day extension at the beginning of a FOIA case. The Court, once again, finds that the DOL showed good cause for an extension under 5 U.S.C. § 552(a)(4)(C).

Mr. Jordan's third argument misunderstands the requirements imposed by D.C. Civil Rule 7(m). *See* Pl.'s First Rule 11 Mot. at 7–9. He alleges that he "repeatedly attempted to work with [the DOL]'s counsel to narrow the areas of disagreement" but received nothing in return from the DOL's counsel. *Id.* at 8. He cites four reasons that he believes this constituted sanctionable conduct. First, he argues that the DOL's counsel "refrained from explaining why he contended that the Complaint was not served until September 28, 2016" when Mr. Jordan

asserted that it was served on September 27, 2016. *See* Pl.'s First Rule 11 Mot. at 8, ECF No. 10;

Pl.'s First Rule 11 Mot., Ex. 2 at 8, ECF No. 10-1. However, the DOL explained its reason in its

opposition to sanctions. *See* Def.'s Opp'n Pl.'s First Rule 11 Mot. at 3 n.3. Though "the

Complaint was received in the U.S. Attorney mailroom on September 27, 2016, it was not

received by the civil-process clerk at the United States [A]ttorney's office until September 28,

2016." *Id.*; *see also* Pl.'s First Rule 11 Mot., Ex. 3 at 10, ECF No. 10-1. But even putting this

explanation aside, given that the motion for extension was timely filed on October 25, 2016,

regardless of whether service was effected on the 27th or 28th, no consultation was necessary on

this point.

 Mr. Jordan similarly claims that the "[DOL]'s counsel did not even begin to attempt to

provide any indication that good cause could be shown for requesting any extension, much less a

full 30 day extension." Pl.'s First Rule 11 Mot. at 9. However, the DOL emailed Mr. Jordan "to

request a 30-day extension and explained the reason for the request within said email." Def.'s

Opp'n Pl.'s First Rule 11 Mot. at 4, ECF No. 17; *see also* Pl.'s First Rule 11 Mot., Ex. 4 at 13,

ECF No. 10-1 ("At this time we are gathering the applicable records and researching your

claims[] and require additional time to prepare a responsive pleading."). The DOL's motion

demonstrated good cause through its rationale that "[a]dditional time [was] necessary to

complete the review and research, provide undersigned counsel with a litigation report, and draft

and review an appropriate response to the Complaint." Def.'s Mot. Extension Answer ¶ 2. As set

forth above, given the routine relief sought, such limited justification sufficed. That Mr. Jordan

found the DOL's rationale for requesting additional time unpersuasive, *see* Pl.'s First Rule 11

Mot., Ex. 4 at 12, ECF No. 10-1, does not render it sanctionable.

Mr. Jordan also claims that the DOL's failure to respond to his statement that Chief ALJ Henley, ALJ Merck, Ms. Johnson, could simply "admit or deny all allegations in the Complaint pertaining to them" within thirty minutes to two hours is sanctionable. Pl.'s First Rule 11 Mot. at 9. Local Civil Rule 7(m) merely requires parties to attempt a good-faith effort to "narrow the areas of disagreement" concerning a nondispositive motion. Mr. Jordan's argument for sanctions does not concern narrowing the area of disagreement for the DOL's motion for an extension, so sanctions are unwarranted. Mr. Jordan finally alleges that the DOL did not respond to his request that the DOL "establish that Judge Merck's statement was accurate." Pl.'s First Rule 11 Mot. at 9; Pl.'s First Rule 11 Mot., Ex. 1 at 5. Similarly, that contention has nothing to do with narrowing the areas of disagreement regarding the DOL's motion for an extension. Thus, sanctions based on Rule 7(m) for this contention would also be improper.

Mr. Jordan's fourth argument regarding the DOL's counsel's failure to safeguard against frivolousness and ex parte communications conjures frivolousness and ex parte communications where none exist. *See* Pl.'s First Rule 11 Mot. at 9–10. As to frivolousness, Mr. Jordan maintains that "[the DOL]'s counsel failed to state with any particularity any basis for requesting any extension, much less a full 30 day extension." *Id.* at 10. The Court has dealt with this contention *ad nauseam*—it is wrong. As for the ex parte allegation, the DOL's motion simply cannot be properly considered ex parte. *See supra* note 19. Mr. Jordan's claim regarding frivolousness and ex parte communications is insufficient—perhaps itself to the point of frivolousness—and thus sanctions against the DOL are not justified.

Mr. Jordan's fifth argument—that the DOL's counsel acted in such a way that meant Mr. Jordan would be denied notice of and opportunity to respond to the DOL's motion to extend time—unjustifiably assumes sanctionable bad faith on behalf of the DOL. *See* Pl.'s First Rule 11

Mot. at 10. Mr. Jordan claims that the DOL's counsel failed to ascertain whether Mr. Jordan received any notice of filing from the Court. *See id.* at 11. The docket reflects that this Court granted Mr. Jordan CM/ECF access on October 19, 2016, five days before the motion for an extension of time was filed. *See* Order Granting Pl.'s Mot. CM/ECF User Name and Password at 2, ECF No. 4. As such, the DOL reasonably assumed that Mr. Jordan "was receiving ECF notification of all filings by the time the motion for extension of time was filed on October 25, 2016." Def.'s Opp'n Pl.'s First Rule 11 Mot. at 6. The DOL relied on Local Rule 5.4(d) which states that "[e]lectronically filing a document operates to effect service of the document on *pro se* parties who have obtained CM/ECF passwords," and that "[t]he requirement of a certificate of service or other proof of service is satisfied by the automatic notice of filing sent by the CM/ECF software to *pro se* parties who have obtained CM/ECF passwords." *See* LCvR 5.4(d)(1)–(2); Def.'s Opp'n Pl.'s First Rule 11 Mot. at 6. And even assuming that Mr. Jordan was denied his opportunity to respond to the motion because he did not yet formally have ECF access, this denial did not arise from any sanctionable behavior by the DOL. Moreover, Mr. Jordan had knowledge from at least October 14, 2016, that the DOL intended to file this motion, *see* Pl.'s First Rule 11 Mot., Ex. 4 at 12, ECF No. 10-1, and the DOL understandably figured that Mr. Jordan received notice via CM/ECF, *see* Def.'s Opp'n Pl.'s First Rule 11 Mot. at 6. The DOL's oversight had no effect on the Court's October 26, 2016 Minute Order. But even putting all this aside, the "minor errors [Mr. Jordan] allege[s] do not warrant an 'extreme punishment'" like the one he proposes. *Landrith v. Roberts*, 999 F. Supp. 2d 8, 23 (D.D.C. 2013) (citing *Naegele v. Albers*, 355 F. Supp. 2d 129, 144 (D.D.C. 2005)).[34]

---

[34] Notably, Mr. Jordan does not explain how his erroneous labeling of the "Joint Appendix," *see* ECF No. 34; ECF No. 35, is a mere oversight but Defendant's counsel's oversight is sanctionable.

Finally, Mr. Jordan conjures up an improper purpose on behalf of the DOL in filing its motion for an extension. *See* Pl.'s First Rule 11 Mot. at 11–12. Mr. Jordan accuses the DOL of filing its motion to "cause unnecessary delay." *See id.* (citing Fed. R. Civ. P. 11(b)(1)). However, Mr. Jordan provides no evidence beyond the date the DOL filed its motion to indicate such an improper purpose. *See* Pl.'s First Rule 11 Mot. at 11–12. Thirty-day extensions at the beginning of FOIA cases are common. Without evidence, Plaintiff's claim remains mere speculation, and sanctions are inappropriate based solely on speculative, unsupported attributions of bad faith. For the foregoing reasons, the Court denies Mr. Jordan's First Motion for Rule 11 Sanctions.

### 2. Mr. Jordan's Second Rule 11 Motion

Mr. Jordan's second motion for Rule 11 sanctions relates to "the factual or legal contentions" contained in the DOL's (1) First Motion for Extension of Time to File Opposition to Motion for Summary Judgment, and Proposed Briefing Schedule ("Def.'s Mot. Extension Opp'n Pl.'s Mot. Summ. J."), ECF No. 11; (2) Opposition to Plaintiff's Motion for Sanctions Under Rule 11, Def.'s Opp'n Pl.'s First Rule 11 Mot., ECF No. 17; (3) Answer, ECF No. 14; and (4) Memorandum Supporting the Defendant's Opposition to Plaintiff's Motion for Summary Judgment, Def.'s Mem., ECF No. 20. Pl.'s Second Rule 11 Mot. at 1., ECF No. 33.[35] As sanctions, Mr. Jordan requests that (1) each DOJ attorney that signed or reviewed the filings[36] provide a declaration describing the role he or she played with respect to the contentions in the

---

[35] The Court notes that Mr. Jordan's February 2, 2017 communication with Mr. Cohen suggests that Mr. Jordan satisfied Rule 11's "safe harbor" provision. *See* Fed. R. Civ. P. 11(c)(2); Pl.'s Second Rule 11 Mot., Ex. 1 at 1, ECF No. 33-1. That communication occurred at least 21 days before Mr. Jordan filed this Rule 11 motion. *See* Fed. R. Civ. P. 11(c)(2); Pl.'s Second Rule 11 Mot.; Pl.'s Second Rule 11 Mot., Ex. 1 at 1. Thus, the Court does not consider whether Mr. Jordan failed to satisfy the "safe harbor" provision in making this motion.

[36] This includes Jason T. Cohen (Assistant United States Attorney), Channing D. Phillips (United States Attorney) and Daniel Van Horn (Chief, Civil Division). *See* Pl.'s Second Rule 11 Mot., Proposed Order at 2, ECF No. 33-2.

filings and the actual filing of the at-issue documents and (2) the Court impose disciplinary action upon whichever attorney bears responsibility for filing the contentions and documents at issue in this motion. *See* Pl.'s Second Rule 11 Mot. at 15; Pl.'s Second Rule 11 Mot., Proposed Order at 2–3, ECF No. 33-2.

Mr. Jordan first contends that no DOJ attorney established that a reasonable inquiry had been conducted before filing the DOL's Answer. Pl.'s Second Rule 11 Mot. at 7; Answer. He also claims that no DOJ attorney established that a reasonable inquiry had been conducted regarding the alleged ex parte nature of the DOL's October 25 motion for an extension of time. *See* Pl.'s Second Rule 11 Mot. at 9; Def.'s Mot. Extension Answer. Finally, Mr. Jordan asserts that each at-issue filing had the clearly improper purpose of "causing unnecessary delay." *See* Pl.'s Second Rule 11 Mot. at 14.

The Court denies Mr. Jordan's second Rule 11 motion because (1) the DOL conducted a reasonable inquiry regarding the Answer's evidentiary support; (2) it was unreasonable to expect an inquiry into the ex parte nature of the DOL's motion when there was nothing ex parte about it; and (3) Mr. Jordan again, without any justification, surmises bad faith by his adversary. The legal standard governing this motion is the same standard that governs Mr. Jordan's first Rule 11 motion.

Mr. Jordan's contention that no DOJ attorney established that a reasonable inquiry had been conducted regarding the evidentiary support of the DOL's Answer misinterprets what a "reasonable inquiry" requires. *See* Pl.'s Second Rule 11 Mot. at 7; Answer. The drafters of Rule 11 provide insight into what constitutes a "reasonable inquiry." The Advisory Committee Note states:

> [W]hat constitutes a reasonable inquiry may depend on such factors as how much time for investigation was available to the signer; whether he had to rely on a client for information

as to the facts underlying the pleading, motion, or other paper; whether the pleading, motion, or other paper was based on a plausible view of the law; or whether he depended on forwarding counsel or another member of the bar.

Fed. R. Civ. P. 11 advisory committee note, 97 F.R.D. 198, 199 (1983). The Supreme Court built upon this guidance, cementing the standard for "a reasonable inquiry into the facts and the law before filing" as "one of reasonableness under the circumstances." *Bus. Guides*, 498 U.S. at 551. Mr. Jordan believes that the DOL's assertion that it "lack[ed] knowledge or information sufficient to admit or deny the allegations" in several paragraphs of the complaint demonstrates the lack of a reasonable inquiry. Pl.'s Second Rule 11 Mot. at 7; Answer ¶¶ 8–9, 21–34. These portions of Mr. Jordan's complaint "pertained to the knowledge, beliefs or actions of ALJ Merck or Chief ALJ Henley," and, as such, Mr. Jordan argues that it is impossible that no one at the DOL—including ALJ Merck and Chief ALJ Henley at the OALJ—possessed sufficient knowledge or information. *See* Pl.'s Second Rule 11 Mot. at 7.

Sanctions like the ones sought-after by Mr. Jordan require "clear and convincing evidence . . . of the predicate misconduct" and "of bad faith." *3E Mobile, LLC v. Global Cellular, Inc.*, 222 F. Supp. 3d 50, 53–54 (D.D.C. 2016) (citing *Shepherd v. ABC, Inc.*, 62 F.3d 1469, 1478 (D.C. Cir. 1995)); *Parsi v. Daioleslam*, 778 F.3d 116, 131 (D.C. Cir. 2015)). There is no evidence, let alone clear and convincing evidence, that the DOL did not engage in a reasonable inquiry. And, the DOL addressed the issues raised in Mr. Jordan's Complaint in its Cross-Motion for Summary Judgment and related filings.[37]

---

[37] Because FOIA cases are routinely decided based on cross-motions for summary judgment, an answer often plays an insignificant role in the litigation. Plaintiff fails to show that the alleged incomplete information provided was material to any claim or defense at issue in this litigation.

Mr. Jordan's claim regarding a reasonable inquiry into the ex parte nature of the DOL's motion also comes up short. As already discussed, the DOL's motion cannot be properly considered ex parte because "[Mr. Jordan] was consulted about its filing beforehand[] and it was publicly filed on the docket." Def.'s Opp'n Pl.'s First Rule 11 Mot. at 5; *see also North*, 17 F. Supp. 3d at 4 (noting that communications "filed on the public docket and thus accessible to all cannot, by definition, be considered ex parte communications."). This argument by Mr. Jordan, too, fails.

Finally, Mr. Jordan asserts that each at-issue filing had the clearly improper purpose of "causing unnecessary delay." Pl.'s Second Rule 11 Mot. at 14. In this assertion, Mr. Jordan erroneously contends that the DOL's motion for an extension to file constituted an ex parte communication, fails to provide any evidence of the DOJ causing unnecessary delay, and attributes a competing opinion on how to the apply the law and facts of this case to a desire to cause unnecessary delay. *See* Pl.'s Second Rule 11 Mot. at 14–15. Even more accusatorily, Mr. Jordan asserts that the DOL evinced its desire to cause unnecessary delay by filing its answer on November 28, 2016, filing its cross-motion for summary judgment on December 23, 2016, and proposing a "very protracted briefing schedule" to the Court. Pl.'s Second Rule 11 Mot. at 15. The DOL filed its answer and its cross-motion for summary judgment within the timeframe ordered by the Court, and the Court adopted the DOL's proposed briefing schedule. *See generally* Def.'s Mot. Extension Answer; October 26, 2016 Minute Order; Answer; Def.'s Mot. Extension Opp'n Pl.'s Mot. Summ. J.; November 23, 2016 Minute Order; Def.'s Cross-Mot. There is simply no basis for the contention that the DOL made any filings to cause unnecessary delay. If any party can be accused of unnecessarily delaying this action, it is Mr. Jordan, who has unnecessarily filed a multitude of repetitive, unsupported, and, ultimately, meritless pleadings.

*    *    *

The Court appreciates zealous advocacy. But Mr. Jordan's arguments for sanctions under Rule 11—most of which call directly into question the integrity of opposing counsel—are baseless, if not frivolous themselves. The Court notes that Mr. Jordan is a lawyer and an active member of the New York bar. *See* New York State Unified Court System, *Attorney Detail: Jack R.T. Jordan*, https://iapps.courts.state.ny.us/attorney/AttorneyDetails?attorneyId=5519085. The Court reminds Mr. Jordan that "Rule 11 is not a toy." *Draper & Kramer, Inc. v. Baskin-Robbins, Inc.*, 690 F. Supp. 728, 732 (N.D. Ill. 1988). Sanctioning the conduct of a litigant is a solemn endeavor. "[A]n accusation of such wrongdoing is equally serious." *Id.* The Court admonishes Mr. Jordan to "think twice" before moving for sanctions in the future. *See id.* Mr. Jordan's cavalier approach to sanctions motions could result in him being sanctioned himself. *See id.* (imposing sanctions, *sua sponte*, on a party for baselessly invoking Rule 11 in its unsuccessful merits motion).

## VI.  CONCLUSION

For the foregoing reasons, the Court denies Mr. Jordan's Corrected Motion for Summary Judgment and grants the DOL's Cross-Motion for Summary Judgment except as it relates to the Huber email described above. Additionally, the Court grants Plaintiff's Unopposed Motion to Amend the Complaint, denies Mr. Jordan's First Motion for Sanctions Under Rule 11, Motion to Compel Depositions of Smyth and Johnson, Motion to Strike Smyth's Declaration, Motion to Compel Production of Evidence Regarding Smyth Declaration, Motion to Strike Prohibited Ex Parte communication and Vacate October 26 Minute Order, Second Motion for Sanctions Under

Rule 11, and Motion Regarding the APA as Basis for Decisions. An order consistent with this

Memorandum Opinion is separately and contemporaneously issued.

Dated:  August 4, 2017                                          RUDOLPH CONTRERAS
                                                               United States District Judge